So we appreciate your participating in this exercise this morning. There is a third member of the panel, of course, Justice Schmidt, will also be working on the decision in this case. We are recording this session, so he will be listening to the recordings and will be participating with us in the decision. Mr. Gable, are you ready to start? Mr. Gable Yes, Your Honor. May it please the court, Andrew Gable for the appellant, Travis Williams. Travis Williams was convicted of two cases of predatory criminal sexual assault and received the life sentence. Ms. Schmidt Can I pause you for just one minute? You're good. Proceed. Mr. Williams received the life sentence for two cases of predatory criminal sexual assault. He was accused of assaulting his biological daughter, K.W., and his stepdaughter, H.S. These cases were joined without objection after the court granted the state's motion for propensity evidence, and in that motion argued that A.R., the biological daughter, as well as his ex-wife, Patty, would provide testimony to corroborate testimony, and A.R. would testify about her own abuse from the defendant. At the trial, however, the state did not call those witnesses and only called three witnesses, the two complaining witnesses and an expert witness. At the trial, both complaining witnesses testified about telling of the abuse to other people and acknowledged that they initially denied the abuse to DCFS in 2009 before later making allegations in 2016. Here, the first issue on appeal is the state's closing arguments and rebuttals. The first was the state, over objection, argued that the defense could subpoena any witnesses it wanted to provide corroboration. The defense had argued that if K.W. had told A.R. and her own wife about the abuse, why didn't they take the stand? The defense had also argued that there were many other witnesses that could have corroborated any of the allegations, including Patty, the ex-wife of the defendant, and the mother of one of the complaining witnesses. The state, however, said that if one of those witnesses had testified, the defense could have subpoenaed them. This was an improper shifting of the burden. The state was the one who brought out about the two complaining witnesses making the outcries. The state was the one who brought out that other people were potentially present when the abuse occurred, including A.R. being in the bed while the alleged abuse occurred. The defense, it was perfectly proper for them to comment on these witnesses not being presented, and it did not open the door for the state to be able to argue that they could have subpoenaed them. Secondly, these witnesses were not equally accessible to the defense. A.R., although she was the defendant's biological daughter, was listed in the state's own motion for propensity evidence that she was a victim of the defendant. She was also the sister of one of the complaining witnesses. As for K.W.'s wife, she is the wife of one of the complaining witnesses, and there was testimony that the defendant would not allow her in his house because he didn't approve of her sexual orientation. And as for Patty, the defendant's ex-wife, she was also included in the state propensity motion. The state told the court that she was a state witness. She was listed to the jury as a state witness and as the mother of one of the complaining witnesses and testified for the state at sentencing. She was not equally accessible to the defendant. The next issue with the closing arguments is after there was the objection and sidebar. During the rebuttal argument, the state then said that they could not call certain witnesses, notably A.R. and K.W.'s wife, because of the hearsay rules and that defense counsel knew this. And that hearsay is anything that's said out of court. This was, number one, an improper definition of hearsay. It did not include that hearsay is something said outside of court, offered to prove the truth of that matter. And as shown in our brief, the testimony would not have been hearsay. In particular with A.R., the testimony was that K.W., the complaining witness, told A.R. about the abuse and denied the abuse to DCFS, but then the truth about the abuse later on. The state could have had her testified as a prior consistent statement, but that was not hearsay evidence. And finally, by claiming that defense counsel knew about this, this was an attack on defense counsel that he was making frivolous arguments, closing arguments, and it implies that the state had valid evidence that it just wasn't allowed to present because of the hearsay rules. These issues were all prejudicial because there was not any corroboration for... I'm sorry. Are you able to hear me? I apologize. Yes. There was, it's prejudicial because the only evidence at the trial were the two complaining witnesses. There was no corroboration. There was no confession, no physical evidence. And if they outcried to these people, none of those people testified. The second issue on appeal is the ineffective assistance of counsel. Here, the complaining witness K.W., without objection, testified that she was not having sex with anyone except for the defendant, that she thought she was pregnant, and that she tried to terminate the pregnancy by punching herself in the stomach. Prior to trial, the state filed a motion pursuant to the rape shield to keep out any mention of sexual history. The defense agreed with that. However, during the trial, the state elicited from her that she believed that she was pregnant. Now, the state did not specifically ask her, who else were you having relations with? They did say, when you find out you're pregnant, why did you go to your father? And she replied, because I wasn't having sex with anyone else. This information was completely irrelevant. The state had already gotten from the witness the time frame and the age of the complaining witness, because after the first incident, she remembered how old she was, what class she was in, what she was wearing. So there was no need to get any information about all this extra prejudicial information to show any sort of time frame. This was highly prejudicial, and there was no reason for the defense counsel not to object from it. And the state then even mentioned in its initial closing arguments that she thought she was pregnant four times. And with that, I will invite any questions from the court. Thank you. Do you have questions, Justice O'Brien? I do have a couple. Mr. Gabel, you indicated that this can't be considered invited error because it was appropriate for defense counsel to make the statements in closing. And so you're saying that when you make that kind of a statement, it doesn't allow for the state then to come back with an explanation of why these people didn't appear or is the error that can't be presumed invited about the inaccuracy, if any, about the hearsay definition? It would be to both, Your Honor. The first, it would not be invited because it's specifically to A.R., Patty, and K.W.'s wife. Those witnesses were not equally accessible to the defense. So if there were witnesses that either party could have easily gotten into court, then it may have opened the door and be invited response. However, if these are clearly state witnesses under the control of the state and they mentioned them throughout the trial, and with Patty, she's mentioned in the state's opening arguments, I don't believe the state can then not call those witnesses and then be able to say, oh, well, the defense. As for the second issue with the hearsay, I don't think I was invited at all, especially if it was an improper definition of hearsay. And to try to say that that's why they didn't call these witnesses is because it was hearsay. I don't believe that is invited at all. Let's try to determine if I have another question about that. Because I know that defense counsel didn't object to the statements when they were initially made in the, I guess the end of the closing arguments. So at that point, do we have to look to whether or not the just to the, the air in the comment, or do we have to look at whether what they said about the hearsay argument is was incorrect in order to, is doing one enough to find out that it was not, that it was air for them to make that comment, that it was not invited, or then do we have to go on and also consider the truthfulness of whether or not that was in fact hearsay? I believe either comments would be enough to, for reversal. There wasn't, there was an objection when the state initially said that they could, about the subpoenaing witnesses. There was no objection from defense counsel when they made the comments about the hearsay. Now it's a little difficult to separate those two out. But as we've noted in the brief, even if that objection, the original objection to shifting the burden does not carry over under plain error, this would still be grounds for reversal. And it should be noted in the motion for the new trial. It did mention about maybe not using the word burden shifting, but talking about the burden shifting, but did not mention anything about the hearsay issue. Thank you. Mr. Gable, was there a jury instruction given on hearsay? There was not, Your Honor. So there was never any correction by the court? Yeah, that is my understanding, reviewing that there was no hearsay instruction. So the jury was left with the definition provided by the state. Okay. Okay. What was the, was there anything improper about defense counsel's argument? Your Honor, which specific argument? Well, just generally, the general attack on the weakness of the state's case. Is that a predictable and allowable argument to be made by defense? Yeah, I would submit yes, Your Honor, that there is many, there was a total lack of corroboration here, which was the theme of the defense's theory, and as well as the state eliciting that the complaining witnesses had told people about this abuse. I think it's entirely appropriate to comment on where are these people? The prosecutor's argument was that they were being attacked, and therefore it was okay for her to say the things that she said, with regard to whether or not the defendant had the right to subpoena witnesses. I'm sorry, that was a garbled up kind of question. It's our position that that does not open the door. If there were witnesses that were equally accessible to both sides, perhaps then the state could comment in closing, well, they could have called these people in as well. But if these are witnesses that are under the control of the state and are listed as potential victims, at least one of them, of the defendant, I don't think it's appropriate for them to be able to say, well, they could subpoena them. They could try to counteract in different ways, but not by trying to shift the burden, by saying they could bring these witnesses in. Okay. All right. Are there any other questions? I don't know. All right. Thank you, Mr. Gable. I need to do one housekeeping detail between your arguments. We did not call the case for purposes of the recording. So these arguments are with regard to the case of People v. Travis J. Williams, and the case number is 3-170-848. Okay. Thank you. Mr. Austell, good morning. Good morning. May it please the court, counsel. My name is Mark Austell, and I represent the people of the state of Illinois, the FLE. This first issue, defendant argues that in closing argument, the prosecutor shifted the burden and made prejudicial remarks. People have argued, defendant has forfeited the burden-shifting claim, and has replied to the brief. Defendant argues that he has preserved the issue for appeal, and alternately, defendant asked for plain error, and for, on the first time, has argued ineffective assistance as to this claim. Defendant claims trial counsel argued burden-shifting at trial, and in his post-trial motion, so he cannot now claim ineffective assistance for failing to do so. The prosecutor did not ridicule opposing counsel, or claim defendant was obligated to present any evidence. Therefore, the prosecutor properly responded to defendant's closing argument, and she did not shift the burden in rebuttal, so there's no error, and plain error review does not apply. Also, the evidence was not closely balanced, and the prosecutor's comments did not affect the fairness, or the outcome of defendant's trial, so he cannot prove plain error under either prong. Defense counsel repeatedly reminded the jury in closing that defendant had no burden to present evidence, and the burden was on the people only. Trial counsel argued the allegations of sexual abuse were fabricated, and K.W. and H.S. lied because of a divorce or custody situation, and because defendant disapproved of K.W. being a lesbian. Counsel claimed the family talked together about the sexual assault allegations, and K.W. and H.S. lied under oath. Defense counsel noted K.W. claimed to have told her younger sister, A.R., about being sexually abused by defendant, before A.R. had made a statement in 2009. Defense counsel argued, wouldn't that have been nice to have heard? Call A.R. to the stand and ask if K.W. had told her about the abuse in 2009. Counsel repeatedly argued that people could easily have called A.R. to corroborate K.W.'s testimony. Is it your argument, Mr. Russell, that that's incorrect argument by the defendant, or improper? Well, it's improper in that it implies that the state is hiding something, that the people necessarily had to call this witness, and that's not true. The second district, Enola, noted that prosecutors are given wide latitude in closing arguments, and may respond to arguments by defense counsel that clearly invite a response, and defense counsel's claims that the people could have called A.R. and others clearly invite the response. In rebuttal, people observed that defense counsel had made a point of asking why the people hadn't called A.R., and the prosecutor responded, well, first of all, the defense has subpoena powers just like the government. At this point, defense counsel objected, there was a sidebar, and after the sidebar, the prosecutor resumed rebuttal, and she said the defendant has subpoena powers just like the state, and I will note to you that I am not implying that the defendant has any type of burden in this case. I fully accept the fact that we have the burden to prove this case beyond a reasonable doubt. The Enola Court has reiterated even improper marks do not merit reversal unless they result in substantial prejudice to defendant. The prosecutor's remark was made in response to defense counsel's claims, and it did not substantially prejudice defendant. In closing, defense counsel repeatedly reminded the jury that the burden was on the people. But most importantly, the jury was instructed many times that the people had the burden to prove the defendant guilty beyond a reasonable doubt, and the defense had no burden to put on any evidence at all. Our Supreme Court has repeatedly stated that jurors are presumed to follow the instructions and that arguments of counsel do not have the same impact on the jury as do the jury instructions. As a second argument, and under his first issue, the defendant argued the prosecutor invited a response by the defense because A.R., who was K.W.'s younger sister, and Patty, defendant's ex-wife, were listed to the jury as prosecution witnesses. If voir dire, the prosecutor said the jury would hear reference to initials from several witnesses, and after providing the listed names or initials, the prosecutor said, that's a list of potential witnesses that you may hear from this week. The prosecutor did not say in opening statement that Patty would be testifying, and she did not even mention A.R. in opening. The defendant claims the people's listed witnesses were not available to the defense. In his reply brief, the defendant claims the people cited no authority stating that people can list potential witnesses and then not call them at trial. But he then observed that people cited the Sanchez case from our Supreme Court. Sanchez stated there's no requirement that every witness listed in the people's discovery must be called, and the decision to call a potential witness is a matter of trial strategy, subject to the up-to-the-minute assessments of counsel. The defense theory was that K.W. and H.S. talked to Patty before making sexual assault allegations, possibly in an attempt to help in a custody dispute. But the defense strategy does not dictate which witnesses the prosecution will call. Defendant could have called anyone listed as a potential witness, prosecution witness that is, to testify for the defense also. They were all known to defendant, and they were equally available to the defense. Most importantly, whether the witnesses were all equally available to the defense is actually a red herring. Both parties and the judge repeatedly told the jury the people had the burden of proof and defendant had no burden at all. And considering the closing arguments in their entirety, the prosecutor did not shift the burden in a rebuttal argument. Defendant made a third argument in the first issue that the prosecutor doubled down on the alleged burden shifting in her argument regarding hearsay, and that defense counsel knew the people could not present hearsay testimony. The prosecutor made the hearsay comment on rebuttal, but she did not diminish the people's burden of proof or misstate the law regarding any required element to be proven. And the test to be used to determine whether the prosecutor's comments were prejudicial error is whether the jury would have reached an opposite verdict had the comments not been made. It is not reasonable to believe the verdicts were in any way based on the prosecutor's poor definition of hearsay or her comment that the defense knew the people could not present hearsay testimony. Even if the prosecutor's statement in a rebuttal were improper, any resulting error was harmless due to the weight of the evidence in support of the guilty verdict. The second issue... The weight of the evidence being the testimony of the two alleged victims? Absolutely, Your Honor. K.W. in particular testified to years of sexual abuse by the defendant, starting when she was 11 or 12 in the sixth grade, and up until she told him to stop when she was 17. So there's about a five-year period. And then A.H.S. also testified to multiple events of him inserting fingers into her vagina and forcing her to masturbate the defendant. The second issue, the defendant argues trial counsel was ineffective or counsel did not object to K.W.'s testimony that she had sex... that she only, rather, only had sex with the defendant and about her attempts to terminate her suspected pregnancy by hitting her stomach. In his reply brief, the defendant argues no sound trial strategy would allow K.W. to testify that she only had sex with the defendant and about her attempts to end a suspected pregnancy. Defense counsel on cross-examination elicited the defendant did not ejaculate in K.W. Defense counsel's clear trial strategy was to use the specific testimony and closing argument to try to cast doubt on K.W.'s credibility and to support the defense theory that K.W. fabricated the sexual assault claims against the defendant. Counsel noted that K.W. testified the defendant only shrugged when she told him of the suspected pregnancy. Counsel argued the defendant would never have reacted this way if trying to cover up having sex with K.W. and counsel claimed this conversation never occurred. Defendant's ineffective assistance claims the challenge to counsel's trial strategy and this court should reject the defendant's claim. The defendant also asserted in his brief that the people were barred under the Rape Shield Statute from eliciting that K.W. only had sex with the defendant. But the Rape Shield Statute only bars evidence of past sexual activity that is not relevant to the charges. There are two statutory exceptions to the prohibition. The first is evidence of past sexual activity between the victim and the defendant and the second is that the evidence is constitutionally required and that it would make a meaningful contribution to the trial. Defendant has not cited any part of the record showing the people or defense counsel elicited evidence of K.W.'s prior sexual history. In direct examination, K.W. testified about defendant putting his penis inside her and when asked if defendant had done this before, K.W. said no. This testimony only showed that defendant had not previously had sexual intercourse with K.W. And as in a reply brief, defendant quotes two sentences where the prosecutor asked why K.W. went to defendant when she thought she might be pregnant and K.W. replied, because I wasn't having sex with anyone else. This evidence was relevant as it corresponded to K.W.'s testimony that defendant did not use a condom. It was not barred where it was evidence about defendant having sex with K.W. The defendant also argued in his main brief that K.W.'s lack of a sexual history  K.W. testified about what age she had been when defendant first began to have sex with her and when he stopped, but the people had to prove her age at the time of the offenses because this is an element of the charges. The people did not ask K.W. whether K.W. had sex with anyone prior to when defendant first sexually assaulted her. Most importantly, defense counsel argued in closing that the evidence about K.W. speculating she had become pregnant and hitting herself and that defendant only shrugged when K.W. told him of the suspected pregnancy showed K.W. was not credible. Defendant has argued that failure to object is not invited error. The counsel made specific argument on the pregnancy evidence in closing. Therefore, defendant did invite any error by using this exact testimony to support the defense theory. The prosecutor argued in closing the evidence of K.W.'s suspected pregnancy and her stomach punching showed she was credible, but the prosecutor also noted K.W. claimed in 2009 that the sex was not happening and that this called into question K.W.'s credibility. Defendant cannot show either prong of the circumstances. Defendant asserted there was no tactical reason not to object to this evidence. K.W. and H.S.'s testimony overwhelmingly showed his guilt. Therefore, counsel's only reasonable strategy was to try to show they had a motive to testify falsely. Thus, defendant cannot prove the first strickling prong. Defendant claimed the outcome of the trial would have been different had K.W.'s speculation about the pregnancy been excluded. But even without this evidence, defendant would have been convicted on the unchallenged testimony by K.W. and H.S. Thus, defendant cannot show the strickling prejudice prong either. People asked this court to find people's comments on rebuttal did not shift the burden or affect the outcome of the trial and to find trial counsel was not ineffective. People asked this court to affirm defendant's conviction and sentence. Does the court have any other questions for me? Do you have any questions? I do. I have a couple of questions, kind of walking into the murky water of closely balanced. When you argue that the evidence isn't closely balanced, where we have the, for lack of a better term, he said, she said type of testimony, is it, is he, are you saying that this isn't closely balanced because the two victims testified about multiple acts and there were, you know, two, there was, you know, the two of them testifying or, or how does, how exactly is it that, you know, there's no physical evidence or anything that we, that we can say this is, you know, meets the legal definition of being closely balanced? Well, in this case, there was no evidence that would cast doubt on the credibility of either KW or HS. And they also brought in an expert to talk about delayed disclosures and tentative disclosures where a person initially denies but then later admits that the sexual abuse happened to them. But there was nothing to cast, other than defense counsel's own arguments and cross-examination trying to prove they're not credible, there was nothing presented at trial to diminish their credibility. So in that sense, there was no, it was not closely balanced. It was not diminishing of their credibility, the testimony that they had denied it before in the course of an investigation by the police and DCFS? Well, certainly that one, that was something the prosecutor brought out herself. And that one aspect, of course, would cast some doubt on the veracity of the testimony, but it was clear that this happened over a period of years, five years, as I recall, in KW's case. And she had, was able to determine dates based on her birth dates and what grade she had been in class and that sort of thing, where she had lived. There were multiple houses, as you may recall in this case, that they lived at in session. Sometimes she lived with defendants, sometimes she lived with her mother and stayed with defendants. So there were a lot of evidence presented about when and where and the circumstances of the abuse. I guess I still think that it's pretty telling that they denied that this happened when there was an actual investigation of it. Well, that's true, Your Honor, but that's why the evidence of the expert was presented to show that, in general, they didn't speak to these two victims, but in general, sexual abuse victims often deny the allegations ever happened, and later will admit. And in this case, KW consistently said that she still loved her father, still cared for him, and she stayed with him, you know, at different times after the abuse. And even after she had told him, we're done, and he stopped assaulting her, she still stayed with him on occasion and such. How likely is that? It happens, Your Honor, quite frequently in my experience in cases that I have handled in life experience that I obviously can't bring into this trial or this case. But in prior cases that this court has handled, there have been similar incidents where a sexual abuse victim will deny that, especially where it's a family member, a close family member like a parent or an uncle or a brother or sister, something along those lines, where they will initially deny that to protect that person. And in this case, KW even said she was trying to take the abuse, so to speak, to protect some of the younger sisters from defending. But in terms of the legal standard, you know, Sebi and Melnap and all of those cases, when, you know, really it's a credibility determination, are we looking for, you know, in order to say that this is not closely balanced, some corroborating, whether it's physical evidence or several eyewitnesses, to say this is what happened, you know, and if they're not, if they're testifying about different events that may have happened to each of them, does that establish corroboration that, you know, event X happened to one of these victims because another victim says event Y happened to that victim? I mean, is that sufficient corroboration? Is that what we're looking for? I just really struggle with, you know, that, you know, the legal definition of, you know, not closely balanced because we, you know, two people testify and an expert says that we should, you know, say it's not at all unlikely that they would have not told the truth, you know, in an earlier investigation. But I really thought the standard was we, you know, when we're looking at whether or not the evidence is closely balanced in these cases, we, in order to make that determination, we have to determine, well, was there other corroborating evidence that was presented? And what, do we have that here for these individuals? No, there's not corroboration. And under the case law, especially in sexual assault cases where this is a private thing that happens, there's nobody else around and often the victims do not immediately go to the hospital to have a rape kit taken, et cetera. And they often do not report for a substantial amount of time after, if it's a single event or in this case, multiple events. So the physical evidence corroboration is typically not available. It's great when it is because it backs up, of course, the victim's testimony. But this, like many other cases, there is no physical evidence to corroborate the testimony. And in my reading of the case law over the years, and I hope we cited some in our brief, that type of physical evidence to corroborate a testimony is not required. I agree, absent an error of this. Don't get me wrong. I'm talking about, you know, if we were to say that, you know, there's been an error, and if we have to make a determination of whether or not, you know, it's a plain error, whether this is, you know, immediate, you know, this evidence is not closely balanced or closely balanced, given the context of finding an error. I completely agree with you that, you know, the corroboration in these cases isn't necessary for the conviction. But when we're looking at whether or not an error occurred, and it's of the nature that would have to go back, based on the, you know, the tests we've been given in the case law. That's where I'm trying to, you know, trying to get some guidance here. So thank you for your answers. If I may interject, the first step, of course, in the plain error analysis is whether there was actual error in the first place. And we submit that there was an error, because in the first case, the prosecutor was responding directly to attacks on why the prosecution didn't put on, especially AR or other testimony, such as Patty's testimony. The mother went, but she had no direct knowledge of any abuse. She just had been told by her daughter, H.S., and also by K.W., that the abuse occurred. So she could testify that. But that's all she could have said. And probably would have been a hearsay objection. And, of course, counsel has stated in a reply brief that there would be ‑‑ it would be allowed under hearsay exceptions. But that was not determined at trial, because there was no objection. There was an objection. But the definition of hearsay didn't affect the outcome of this trial. It was incomplete. And people admitted in our brief that the prosecutor's comment was a bit petulant, where she said that the defense could have also called these witnesses if they wanted to. But this did not affect the outcome of the trial. And you don't know that. You don't know what the jury focuses on when they arrive at a decision. Well, of course, nobody ever knows, absolutely. But there's no indication of the record as to the correct way to phrase this. I believe that the jury would have relied on this in any way. I have another question about the expert. She's listed as being a forensic ‑‑ an expert in forensic interviewing and also a clinical psychologist. Am I correct that she did not interview either of these witnesses? That's correct. They were adults at the time, and she declined to interview them. So she never talked to them. And the sum total of her testimony was that a lot of times people don't report at the time. Is that correct? Well, that's the key to her testimony in a nutshell is that those, as I mentioned earlier, the two different types of delayed reporting, and that's what her testimony was for only to discuss why either of these victims would have delayed or even in this case why they would have denied initially and then reported later. Why they might. Yes. As was admitted to trial, and we certainly don't dispute that this expert did not interview our two testifying victims. And so she could not testify specifically about why either of those women would have either delayed reporting or initially denied that the abuse happened. So the evidence that ‑‑ the relevant, effective evidence at trial is solely the testimony of these two women? The evidence that is sufficient to convict beyond a reasonable doubt would be from KW and HS. Thank you. Thank you, Your Honor. Any other questions? Okay. Mr. Gable, any rebuttal? Yes. Just briefly, Your Honor. As for the state's argument that just because they list witnesses that they don't have to call them, we're not arguing that the state must call every witness that's listed. Just that there are key witnesses that are not equally accessible to the defense, they can't then comment on the defense not calling those witnesses. Here I believe the justices have seen there is a total lack of corroboration. And with the errors here, though, the state was able to get in some corroboration that KW and HS had told other people about the abuse, as well as that AR was allegedly present in the bed while all this abuse went on. However, they did not call those key witnesses at trial, which is a perfectly reasonable comment by defense counsel to note. And then just finally, about the ineffective assistance, the state is arguing that it was invited error in the closing. However, it's my recollection that the state's initial closing talked about KW being pregnant four times, and then defense counsel, his argument was in part in response to that, and that it was not invited error. And with that, if there are any questions, I'd be happy to answer them. I do have one more question. A lot of the argument in both of the briefs and here this morning is suggesting that the purpose of talking about the witnesses that weren't called was somehow to suggest that the prosecutor may have had some obligation to call those people. Is it not an argument that the state really did not make its case, that it had corroborating witnesses available and didn't call them, and that basically this was an argument that the state didn't make its case for proving that the defendant was guilty of this, and that they didn't make their case because they didn't call witnesses who were available to buttress the testimony of the two witnesses that were called? Yes, Your Honor. I believe, and that's what defense counsel was arguing in his closing, that according to these witnesses, there would have been a lot of corroboration. However, none of it was presented, and that therefore the state did not meet its burden. So is this an argument that the state was obligated to call those people because it noticed them and said that they were going to call them, or is it an argument that the state had these theoretically corroborating witnesses and because they didn't call them, they did not make their case? Our position is not that the state is required to call any witnesses. They can present their case how they wish. They still have their burden. However, if they choose not to call witnesses that are under their control, it is perfectly reasonable for defense counsel to comment on this, and it compounds the error for the state to give incorrect justifications for why they didn't call these corroborating witnesses. Any other questions? Okay, we thank both of you for your arguments this morning. I imagine that somebody will be getting back to you for some feedback on whether there are things you think we can do better to make these more effective. But we do appreciate, as I said before, your participation in this first experience for us. We will take the matter under advisement. Justice Schmidt will be listening to the recording and also participating in the decision. So thank you very much.